Marc S. RUBIN and Angela Viteritti, Plaintiffs,

v.

TOURNEAU, INC. and Jeffrey L. Gwynne and Associates, Inc., Defendants.

No. 92 Civ. 0078 (MBM).

United States District Court, S.D. New York.

July 9, 1992.

Eugene N. Harley, Levy, Gutman, Goldberg and Kaplan, New York City, for plaintiffs Rubin and Viteritti.

Clifford J. Ingber, Anita Lubetsky, Ingber & Ingber, New York City, for defendant Jeffrey L. Gwynne and Associates, Inc.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiffs Marc S. Rubin and Angela Viteritti Sue Tourneau, Inc., their former employer, and Jeffrey L. Gwynne and Associates, Inc. ("Gwynne"), a polygraph testing service, under the Employee Polygraph Protection Act of 1988, 29 U.S.C. § 2001–2009 (1988) ("EPPA"). The case is before the Court on defendant Gwynne's motion to dismiss plaintiffs' "Third Cause of Action" as against Gwynne for lack of subject

matter jurisdiction. For the reasons set forth below, defendant Gwynne's motion is denied.

### I.

■ A court reviewing a motion to dismiss for lack of subject matter jurisdiction must assume that plaintiffs' well-pleaded allegations are true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (1990). The facts viewed from that perspective are as follows.

In or about February 1991, defendant Tourneau, a Manhattan watch and jewelry retailer, hired defendant Gwynne to assist in an investigation into the disappearance of several watches from its inventory. In March 1991, 25 Tourneau employees including plaintiff Rubin, a buyer, and plaintiff Viteritti, a salesperson, received written requests to submit to polygraph examinations from Louis Rosen, Tourneau's Director of Administration. (Compl.Exh. A) Shortly thereafter, plaintiffs took polygraph examinations administered by defendant Gwynne.

On April 16, 1991, plaintiffs were fired by Tourneau for refusing to take a second polygraph examination. Following dismissal, plaintiff Rubin remained unemployed for approximately four months. As of the filing of the complaint on December 31, 1991, plaintiff Viteritti remained unemployed.

Plaintiffs have alleged two claims against defendant Tourneau and one claim against both defendants for violations of EPPA. Plaintiffs' Third Cause of Action, which is the subject of this motion, alleges that in the course of the polygraph examination "[p]laintiffs were forced to answer personal and degrading questions and suffered great embarrassment, humiliation and mental distress for which defendant Gwynne and defendant Tourneau are liable in damages." (Compl. ¶ 34)

Defendant Tourneau has cross-claimed against defendant Gwynne, alleging that Gwynne represented it would inform Tour-

neau as to which employees could lawfully be polygraphed and would conduct the examinations in compliance with EPPA. (Amended Ans. ¶¶ 34, 36) Tourneau seeks indemnification for any judgment entered in this suit and any fines levied by the Department of Labor.

## II.

Congress passed EPPA after concluding that employees and applicants often are denied employment opportunities or fired unjustly because of the misuse of polygraph examinations and the inaccuracies inherent in current methods of lie-detection. *See* S.Rep. No. 284, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 726; H.R.Conf.Rep. No. 659, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 749. EPPA prohibits an employer from requiring an employee or applicant to take a lie detector test. 29 U.S.C. § 2002(1). EPPA also prohibits any adverse action against an employee or applicant who fails or refuses to submit to a polygraph examination, or who files a complaint, testifies or exercises any right granted under EPPA. 29 U.S.C. §§ 2002(3)(A), 2002(4). Exemptions are provided for: (1) federal, state and local government employers; (2) security services; (3) firms authorized to manufacture, distribute or dispense controlled substances; (4) the federal government when dealing with outside contractors engaged in national security intelligence or counter-intelligence; and (5) any employer conducting an ongoing investigation into illegally generated economic loss or injury to its business.[1] 29 U.S.C. § 2006.

EPPA provides for both public and private enforcement. Public enforcement is under the jurisdiction of the Secretary of Labor who is empowered to assess civil penalties and to sue in federal court to enjoin violations of the Act. 29 U.S.C. §§ 2005(a), 2005(b). The private enforcement mechanism—the basis of this suit—is an explicit right of action in favor of employees against "[a]n *employer* who violates [EPPA] ... for such legal or equitable relief as may be appropriate, including, but not limited to, employment, reinstatement, promotion, and the payment of lost wages and benefits." 29 U.S.C. § 2005(c)(1) (emphasis added).

At issue is whether defendant Gwynne may be considered plaintiffs' employer under EPPA and, therefore, whether defendant Gwynne is subject to suit by plaintiffs under 29 U.S.C. § 2005(c)(1). Gwynne argues that it merely assisted an employer in conducting an investigation and is not itself an employer with respect to plaintiffs. Plaintiffs maintain that EPPA's definition of employer is sufficiently broad to include examiners such as Gwynne.

■ In construing a statute, a court must look first to its language and, if the language is unambiguous, "judicial inquiry is complete." *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *see also Connecticut National Bank v. Germain*, —— U.S. ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says"); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) ("[t]he plain meaning of a statute should be conclusive"). Unfortunately, EPPA's definition of employer is ambiguous. In itself, the word employer would appear to exclude a polygraph testing service, which, although it may have assisted the person or entity for whom the examinee works in violating EPPA, is not joined with the examinee in what is commonly thought of as

---

**1.** It is likely that defendants will rely on the "ongoing investigation" exemption. It should be noted that the exemption is available only if, *inter alia:*

(i) the examinee had access to the property in question;

(ii) the employer has a reasonable suspicion that the employee was involved in the incident being investigated;

(iii) the employer executes a statement, provided to the examinee prior to the test that informs the examinee of the incident being investigated and the basis for testing the examinee.

*See* 29 U.S.C. § 2006(d).

an employment relationship. However, for the purposes of EPPA Congress has defined employer as "includ[ing] any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee." 29 U.S.C. § 2001(2). By adopting this provision Congress gave no restrictive definition of employer but instead noted only that whatever definition courts adopt, they should include as employers those who act in the interest of an employer in relation to an employee or prospective employee. What constitutes "acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee" is, on its face, unclear. Plaintiffs argue that by administering the polygraph examinations, Gwynne acted in Tourneau's interest in relation to Tourneau's employees and, as a result, is subject to suit under EPPA.

The other sections of the statute do not clarify the meaning of employer. For instance, the term examiner is used in the statute, *see* 29 U.S.C. § 2007(c), and although this gives rise to an inference that an "examiner" is distinct and different from an "employer," that is hardly conclusive. EPPA does not define examiner, and given the broad definition of employer, there is no reason why a person or entity could not be both an examiner and an employer.

As previously noted, EPPA includes several exemptions which permit work place polygraph testing in certain limited situations. *See* 29 U.S.C. § 2006. One condition for exemption from EPPA is that the tests be conducted by an examiner who "maintains a minimum of a $50,000 bond or an equivalent amount of professional liability coverage."[2] 29 U.S.C. § 2007(c)(1)(B). Based on this provision plaintiffs argue that if examiners are excluded from the category of employers, employees would be unable to bring actions against examiners,

and the bond provision would be rendered meaningless. *See Moskal v. United States*, 498 U.S. 103, 111 S.Ct. 461, 466, 112 L.Ed.2d 449 (1990) ("a court should 'give effect, if possible,' to every clause and word of a statute' "). However, in so arguing, plaintiffs fail to take into account the existence of state remedies.[3] It is possible that the purpose of such a provision was not to ensure recovery in event suit was brought under EPPA, but rather to ensure that polygraphs are conducted by reputable examiners and to protect employees who bring suit against examiners under state law.

The agency charged with administering the statute has concluded that examiners hired only to conduct polygraph tests ordinarily are not employers under EPPA. Pursuant to its duty to issue "rules and regulations as may be necessary or appropriate to carry out [the Act]", 29 U.S.C. § 2004(a), the Department of Labor has promulgated the following regulation:

> The term *employer* means any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee. A polygraph examiner either employed for or whose services are otherwise retained for the sole purpose of administering polygraphs ordinarily would not be deemed an *employer* with respect to the examinees.

29 C.F.R. § 801.2(c) (emphasis in original). According to the Department, the purpose of the regulation is to "exclude [from the definition of employer] a polygraph examiner employed for the sole purpose of conducting a polygraph test." 56 Fed.Reg. 9048 (1991).

When an agency such as the Department of Labor is charged with administration and enforcement of a statute, review of that agency's interpretation of the statute

---

**2.** This condition applies to the exemptions for security services, firms authorized to manufacture, distribute or dispense controlled substances, and employers conducting ongoing investigations into illegal economic loss. 29 U.S.C. § 2007(c).

**3.** Before enactment of EPPA in 1988, 18 states and the District of Columbia had laws regulating or prohibiting the use of polygraphs and 25 states had licensing requirements for polygraph examiners. Mark A. Rothstein, Andria S. Knapp & Lance M. Liebman, *Employment Law* 143 (2d ed. 1991).

is governed by the standard set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See EEOC v. Arabian American Oil Co.,* — U.S. ——, 111 S.Ct. 1227, 1236, 113 L.Ed.2d 274 (1991) (Scalia, J., concurring). Under *Chevron,* the court must first examine the statute to determine whether "Congress has directly spoken to the precise question at issue." *Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781. If the court concludes that the statute's language is ambiguous, as I have done here, "then the court must defer to any reasonable construction of the statute by the implementing agency, 'unless the legislative history shows with sufficient clarity that the agency construction is contrary to the will of Congress.'" *Withey v. Perales,* 920 F.2d 156, 158 (2d Cir.1990) (quoting *Japan Whaling Ass'n v. American Cetacean Society,* 478 U.S. 221, 233, 106 S.Ct. 2860, 2867, 92 L.Ed.2d 166 (1986)); *Weeks v. Quinlan,* 838 F.2d 41, 43–44 (2d Cir.1988). Here, the legislative history is silent; given the ambiguity of the statutory language and the common understanding of the word employer, the Department's interpretation appears reasonable.

Although reasonable, and therefore enforceable under *Chevron,* the regulation must be understood in relation to the statutory language which, while ambiguous, nevertheless limits the extent to which the Department of Labor and the courts may restrict the definition of employer. *Cf. Rosario v. Immigration and Naturalization Service,* 962 F.2d 220, 222–23 (2d Cir.1992) ("if we conclude that the INS' interpretation is inconsistent with the statute's language and purpose, deference is inappropriate"). EPPA's definition of employer is identical in all relevant respects to the definition of employer in the Fair Labor Standards Act of 1938 ("FLSA"). 29 U.S.C. §§ 201–219. Under FLSA, employer

> *includes any person acting directly or indirectly in the interest of an employer in relation to an employee* and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone

acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 203(d) (emphasis added).

It appears at least likely that Congress was aware of FLSA's definition of employer because in the immediately preceding subsection setting forth EPPA's definition of commerce, Congress simply refers to FLSA's definition of commerce. *See* 29 U.S.C. § 2001(1) ("The term commerce has the same meaning provided by section 203(b) of this title.") In the next subsection, defining employer, Congress used the same operative language contained in FLSA's definition of employer; however, Congress could not simply refer to FLSA's definition because EPPA, unlike FLSA, required language covering prospective employees. Such language is unnecessary in FLSA because there is no danger wages below the minimum would be paid or overtime denied to prospective employees; EPPA, by contrast, specifically prohibits employers from requiring that job applicants—*i.e.* prospective employees—submit to polygraph examinations. *See* 29 U.S.C. § 2002(1). The reference to FLSA in the EPPA subsection preceding the one that defines employer and the use of the identical operative language—"includes any person acting directly or indirectly in the interest of an employer in relation to an employee"—suggests to me that Congress intended to adopt the construction given the term employer under FLSA.

> Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change. So too, where, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.

*Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978) (citations omitted); *see McDermott International, Inc. v. Wilander,* — U.S. ——, 111 S.Ct. 807, 811, 112 L.Ed.2d 866 (1991) ("In the absence of a contrary indication, we assume that when a statute uses such a

term, Congress intended it to have its established meaning."); *see also Solimino v. Astoria Federal Savings and Loan Assn.*, 901 F.2d 1148, 1154 n. 9 (2d Cir.1990) (applying *Lorillard* ). Thus, it can be presumed that in borrowing the language from FLSA, Congress intended to adopt the construction given that language by the courts. Had Congress intended to alter the construction, it can be presumed under *Lorillard,* that there would have been some indication in the statute itself or at least in the legislative history. Instead, both are silent. *See Chisom v. Roemer,* — U.S. —, 111 S.Ct. 2354, 2364 n. 23, 115 L.Ed.2d 348 (1991) ("Congress' silence in this regard can be likened to the dog that did not bark.") (citing A. Doyle, *Silver Blaze,* in *The Complete Sherlock Holmes* 335 (1927)).

 Courts have adopted an expansive interpretation of employer under FLSA. *Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973); *Real v. Driscoll Strawberry Assocs., Inc.,* 603 F.2d 748, 754 (9th Cir.1979). Thus, a corporate officer with operational control is considered an employer, *see, e.g., Donovan v. Sabine Irrigation Co.,* 695 F.2d 190, 194–95 (5th Cir.1983), as is a cooperative whose members work at home. *See Goldberg v. Whitaker House Cooperative,* 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961). Taken literally, however, the phrase "acting directly or indirectly in the interest of an employer in relation to an employee" would support liability against any agent or employee with supervisory power over employees. *See Donovan v. Agnew,* 712 F.2d 1509, 1510 (1st Cir.1983). Hence, courts always have been guided, and constrained, by the "economic reality" of the relationship between the alleged employer and employee. *Goldberg,* 366 U.S. at 33, 81 S.Ct. at 936; *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947); *see Frasier v. General Electric Co.,* 930 F.2d 1004, 1008 (2d Cir.1991); *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir. 1991); *Donovan,* 712 F.2d at 1510. In determining whether, as a matter or economic reality, an entity is an employer for purposes of FLSA, courts focus on whether the alleged employer has some degree of control over the terms and conditions of employment. Relevant factors include whether the alleged employer:

(1) had the power to hire and fire the employees;

(2) supervised or controlled employee work schedules or conditions of employment;

(3) determined the rate and method of payment; and

(4) maintained employment records.

*See, e.g., Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465, 1469 (9th Cir.1983); *Agnew,* 712 F.2d at 1511.

 These factors measure the extent to which the person or entity is responsible for an employer's compliance with FLSA. Thus, the phrase "acting directly or indirectly in the interest of an employer in relation to an employee" is defined in accordance with FLSA's "remedial purpose." *See Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1058 (2d Cir.1988). As a result, "[t]he term employer includes individuals with managerial responsibilities *and* 'substantial control over the terms and conditions of the [employee's] work.'" *Lee v. Coahoma County,* 937 F.2d 220, 226 (5th Cir.1991) (quoting *Falk,* 414 U.S. at 194, 94 S.Ct. at 430) (emphasis added). But employer does not include those who "do not hire and fire employees, control the methods of operation ..., set hourly wages, or control the payroll." *Dole v. Continental Cuisine, Inc.,* 751 F.Supp. 799, 802 (E.D.Ark.1990). Thus, although ambiguous, FLSA's definition of employer must be understood as including those who, as a matter of economic reality, exert control over those aspects of employment covered by the statute.

 Just as the phrase "acting directly or indirectly in the interest of an employer in relation to an employee" is applied to effect FLSA's purpose, so too, under *Lorillard,* must it be applied to effect EPPA's purpose—restricting the use of lie detectors in the work place. *See* S.Rep. No. 284, 100th Cong., 2d Sess. (1988), *reprinted in*

1988 U.S.C.C.A.N. 726; H.R.Conf.Rep. No. 659, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 749. Accordingly, a person or entity "acts ... in the interest of an employer in relation to an employee or prospective employee," and, therefore, is subject to suit under 29 U.S.C. § 2005(c)(1) if, as a matter of economic reality, that person or entity exerts some degree of control over the employer's compliance with EPPA. This is in accord with the Secretary of Labor's carefully phrased regulation which *"ordinarily"* excludes examiners "retained for *the sole purpose* of administering polygraphs." 29 C.F.R. § 801.2(c) (emphasis added).

■ Indeed, it is to be expected that an entity in the business of administering polygraph examinations would have a better understanding of EPPA's restrictions than an employer who rarely has occasion to conduct such examinations. For example, if an examiner decides which employees may be polygraphed and under what circumstances polygraph examinations are permissible, that examiner is "acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee." On the other hand, if the examiner is hired for the sole purpose of administering examinations at the direction of the employer, then, as a matter of economic reality, that examiner does not exert control over the employer's compliance with EPPA and, therefore, is not subject to suit under 29 U.S.C. § 2005(c)(1).

■ In the case at bar, it is unclear whether defendant Gwynne had any role in the investigation beyond administering the examinations. Plaintiffs contend that it did, arguing that Gwynne "provided expertise", which may have included informing Tourneau of EPPA's restrictions. (Pl. Mem. at 7) Similarly, in its cross-claim defendant Tourneau alleges that Gwynne represented it would inform Tourneau which employees could be examined lawfully and would conduct the examinations in compliance with EPPA. (Amended Ans. ¶¶ 34, 36) Because at this stage of the proceedings, all inferences must be drawn in favor of plaintiffs, *Scheuer v. Rhodes,* 416 U.S.

232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), I conclude that defendant Gwynne exerted some control over Tourneau's compliance with EPPA, and therefore is subject to suit under 29 U.S.C. § 2005(c)(1).

For the reasons stated above, defendant Gwynne's motion is denied.

SO ORDERED.