**Ricardo del CANTO, Plaintiff,**

v.

**ITT SHERATON CORPORATION, et al., Defendants.**

**Civ. A. No. 92–2818(PLF).**

United States District Court, District of Columbia.

Oct. 21, 1994.

See also, 865 F.Supp. 934.

Charles Cervantes, Washington, DC, for plaintiff.

Jeffrey Freund, Mady Gilson, Virginia Seitz, Washington, DC, for defendants.

## MEMORANDUM OPINION

FRIEDMAN, District Judge.

This matter came before the Court on the parties' cross-motions for summary judgment. After a hearing, the Court granted Defendants' motion for summary judgment, denied Plaintiff's motion for summary judgment, and entered judgment on all counts of the Amended Complaint in favor of Defendants by its Order of August 31, 1994, and for the reasons stated in open court on August 24, 1994. This opinion confirms the Court's oral ruling.

The Plaintiff Ricardo del Canto filed a complaint, and then an amended complaint, against Defendants ITT–Sheraton Corporation, Hotel and Restaurant Employees Union Local 25, and Ronald Richardson, Executive Secretary–Treasurer of Local 25. By stipulation and agreement, the Defendant ITT–Sheraton has previously been dismissed from the case.

There are three essential allegations that have been made in the complaint. Plaintiff first alleges that the Defendants violated Mr. del Canto's rights under the Employee Polygraph Protection Act of 1988. 29 U.S.C. §§ 2001–2009. Plaintiff next alleges that Defendants defamed Mr. del Canto by publishing a statement that he is a liar and a thief. Finally, Plaintiff alleges that Defendants conspired with each other and with ITT–Sheraton both to violate Mr. del Canto's rights under the statute and to defame him.

## I. *The Undisputed Facts*

The following facts are undisputed. Defendant Local 25 represents hotel and restaurant employees who work in unionized hotels in the Washington, D.C. area, and Defendant Ronald Richardson is the Executive Secretary–Treasurer of the Local. Declaration of Ronald Richardson ("Richardson Dec.") ¶¶ 1–2. The hotel is a member of a Washington, D.C. Hotel Association and therefore is a party to the collective bargaining agreement between the Local and the Association. Richardson Dec. ¶ 2. Plaintiff

Ricardo del Canto has been a member of the bargaining unit at the hotel, which has been represented by the Local for many years. Richardson Dec. ¶ 3.

On December 18, 1991 the hotel suspended, and later terminated, Mr. del Canto because hotel security officers saw Mr. del Canto leave the hotel following his work shift on December 17 carrying a box that the hotel believed to be liquor he had taken without authority. Richardson Dec. ¶ 3. According to the hotel, Mr. del Canto fled when the security officers instructed him to stop. *Id.* Ms. Vivian Taylor, the Director of Human Resources at the hotel, told Mr. del Canto the day after the alleged incident that he had been suspended pending investigation of those events. Richardson Dec. ¶ 4.

On that same day Mr. del Canto went to the Union's offices to seek assistance with the problem. He explained to Ronald Richardson, the Executive Secretary–Treasurer of the Union, what had happened. Richardson Dec. ¶ 5. He told Mr. Richardson that he had not taken any liquor or anything else from the hotel; rather, he said, he was carrying a bag of his dirty shirts under his arm and had gone out the back exit only because he had parked his car in the alley behind the hotel. Mr. del Canto told Mr. Richardson that in addition to the shirts, he had a large amount of money with him and, concerned for his safety and his property, that he ran when he saw two people in a car in the alley. *Id.*

According to Mr. Richardson, during the meeting he had with Mr. del Canto on December 18, Mr. del Canto on his own initiative brought up the possibility that he might take a lie detector test in order to demonstrate to the hotel that he had not taken any liquor or anything else from the hotel. Richardson Dec. ¶ 6. Mr. del Canto says that it was not he who initially proposed that he take a lie detector test, but Mr. Richardson. Memorandum of Defendants in Support of Motion for Summary Judgment, 4 n. 3. In his declaration, Mr. Richardson states that he is generally opposed to lie detector tests, but in this case he thought the suggestion a good one because it effectively would give Mr. del Canto "two bites at the apple."

Richardson Dec. ¶ 6. Mr. Richardson thought Mr. del Canto would get reinstated immediately if he passed the lie detector test, but even if he failed the test, under the agreement between the hotel and the Union he would still have an opportunity to pursue his grievance to arbitration. *Id.* For these reasons, Mr. Richardson says he agreed to raise the possibility of a lie detector test with the hotel. *Id.*

Mr. Richardson declared that at a meeting on January 29, 1992, between Union representatives, the hotel and Mr. del Canto, Carl Madda, an official of the Sheraton Hotel Corporation, told Mr. del Canto that he understood that Mr. del Canto was willing to take a lie detector test in order to return to work immediately. Richardson Dec. ¶ 8. Mr. del Canto responded that Mr. Madda's understanding was correct. *Id.* *See* Plaintiff's Statement Of Material Facts As To Which There Is A Genuine Issue ¶ 8 ("There is not a genuine issue of fact here.") Thus, regardless of who may have initiated the suggestion, it is undisputed that at some point Mr. del Canto told the hotel and the Union that he was willing to take a lie detector test. Some time thereafter, the hotel informed Mr. Richardson that it was, in fact, willing to reinstate Mr. del Canto immediately if he were to pass a lie detector test. Richardson Dec. ¶ 9. After consulting with counsel, however, Mr. del Canto decided that he would not take the test. Richardson Dec. ¶ 11.

On April 15, 1992, Mr. del Canto's case was arbitrated before an arbitrator, and he was represented in that matter by counsel engaged by, and presumably paid by, the Union. Richardson Dec. ¶¶ 12–14. Counsel for Local 25 cross-examined the witnesses presented by the hotel and called Mr. del Canto and another individual as witnesses. Declaration of Mady Gilson ("Gilson Dec.") ¶ 10. Mr. del Canto testified to the events precisely as he had earlier reported them to Mr. Richardson.

On April 22, 1992, the arbitrator issued an award, finding that management had not sustained its burden of proof and that the evidence presented fell short of demonstrating that the charged act had occurred. Gilson Dec. ¶ 11. The grievance therefore was sus-

tained and the arbitrator ordered that Mr. del Canto be reinstated with full seniority and full back pay. *Id.;* Richardson Dec. ¶ 14. Mr. del Canto ultimately was awarded his full back pay of over $21,000. Richardson Dec. ¶ 15.

## II. *The Allegedly Disputed Facts*

There are only four genuine issues of disputed fact asserted by Plaintiff. The question before the Court on these summary judgment motions is whether they really are disputed and, if so, whether these disputed facts are material in this case. Fed.R.Civ.P. 56(c); *see Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987).

First, as noted, there is a dispute as to who first proposed the lie detector test: whether Mr. Richardson on behalf of the Union first suggested that Mr. del Canto take a lie detector test, or whether Mr. del Canto himself suggested it. While Plaintiff says that this is probably the most material fact in dispute, Plaintiff's Statement of Material Facts ¶ 5, the Court does not find that this disputed fact is at all material. For one thing, the lie detector test never took place. Furthermore, Plaintiff acknowledges that "there is not a genuine issue of fact" as to whether Mr. del Canto told Mr. Madda on January 29, 1992, that Mr. Madda was correct in his understanding that Mr. del Canto was willing to take a lie detector test was correct. Richardson Dec. ¶ 8; Plaintiff's Statement of Material Facts ¶ 8. In any event, as discussed below, there is no private right of action against either the Union or Mr. Richardson, an officer of the Union, because they are not covered entities under the statute.

The second fact that Plaintiff says is disputed is that all Defendants, presumably including Mr. Richardson and the Union, believed that Mr. del Canto was lying and that he stole the alleged box of liquor. Plaintiff's Statement of Material Facts ¶ 6. Plaintiff cites Mr. Richardson's deposition at pages 24 to 26, Ms. Taylor's deposition at pages 50 to 53, Mr. Madda's deposition at page 18, Mr. DuCamp's deposition at page 41, and Mr. Hopkins' deposition at pages 59 to 62. The Court has read those deposition excerpts and finds that none of them supports the state-

ment that all Defendants, or any Defendant, believed Mr. del Canto to be lying or that he stole the alleged box of liquor. There is absolutely no support in those depositions for that statement. Furthermore, even if they did support that statement, the mere fact that people may have believed Plaintiff was lying or that he stole liquor would not be material.

Third, Plaintiff says it is disputed whether Mr. Richardson spoke with Mr. del Canto and "instructed him to report for the lie-detector test." Plaintiff's Statement of Material Facts ¶ 12. Again, the Court does not believe it is material whether Mr. Richardson instructed Mr. del Canto to report for the lie detector test, suggested a lie detector test or asked him to report for the lie detector test. The fact is that Mr. del Canto never took the lie detector test. Furthermore, as discussed below, the Union and Mr. Richardson are not covered by the statute.

The fourth purportedly disputed fact is the assertion that Mr. Richardson was communicating with third parties concerning the allegations of theft by Mr. del Canto and his guilt at the same time that Mr. Richardson was initiating and arranging for Mr. del Canto to take a lie detector test. Plaintiff's Statement of Material Facts ¶ 22. In these circumstances, Plaintiff says, those communications conveyed Mr. Richardson's disbelief about Mr. del Canto's veracity and, by implication, his theft of liquor. *Id.* Plaintiff says that this purported factual dispute is relevant to his defamation claim.

There are only two pieces of evidence that Plaintiff relies upon with respect to this purported disputed fact. The first is a letter from Albert Hunt and the second is a two-line excerpt from Mr. Richardson's deposition (page 58, lines 11 and 12). Neither the Hunt letter nor lines 11 and 12 on page 58 of the Richardson deposition, however, provides any basis for the allegation that Mr. Richardson communicated his disbelief about Plaintiff's veracity and, by implication, his theft of liquor. Indeed, there is nothing in the record to support the fact that Mr. Richardson did any such thing. On the record before the Court, there really is no dispute of fact; Mr.

Richardson made no such statements and had no such communications.

The Hunt letter was written by Mr. Hunt to Mr. Richardson on January 10, 1992. In the letter Mr. Hunt offered his assistance in the arbitration proceedings against Mr. del Canto because he had known Mr. del Canto in his role as a waiter at the Sheraton Carlton Hotel for more than ten years and said he had the highest regard for him. He wrote that he learned about the incident when Mr. del Canto called to tell him that he had been fired for an offense he did not commit. The letter sets forth what Mr. del Canto told Mr. Hunt had occurred. Suffice it to say that what Mr. Hunt states he was told by Mr. del Canto is consistent with what Mr. Richardson was told by Mr. del Canto immediately after the events in question. In his letter Mr. Hunt stated that after talking to Mr. del Canto he called Michael DuCamp, the general manager of the Sheraton Carlton Hotel, to ask Mr. DuCamp to take a close look at the facts and to indicate his support of Mr. del Canto. The letter describes two conversations Mr. Hunt had with Mr. Du-Camp, an employee of the hotel, and the statement of Mr. DuCamp that he had concluded that Mr. del Canto was guilty and that his firing was justified.

The Hunt letter in no way, either by its language or by implication, supports the allegation that Mr. Richardson communicated to Mr. Hunt a view that Mr. Richardson disbelieved Mr. del Canto or thought he was guilty of theft. No rational reading of the letter, which is the only evidence in the record from Mr. Hunt, supports such an assertion of fact.

Further, when one looks at lines 11 and 12 of page 58 of Mr. Richardson's deposition, which is provided as further support for the argument that Mr. Richardson defamed Mr. del Canto by questioning his veracity and calling him a thief, one finds nothing on those lines or on that page to support the assertion. The Union and Mr. Richardson maintain that neither Mr. Richardson nor any other representative of Local 25 ever published or said they did not believe Mr. del Canto was telling the truth about the events of December 17, 1991, or that Mr. del Canto was guilty of theft. In fact, they say that

Mr. Richardson and other representatives of Local 25 often stated that Mr. del Canto was telling the truth and should be reinstated with full back pay. They maintain that representatives of the Union, including Mr. Richardson, fully and zealously represented Mr. del Canto's interests throughout all of the events and proceedings and it was for that reason that they obtained the favorable result in the arbitration. Nothing in Mr. Richardson's deposition testimony is to the contrary.

When one turns to the Plaintiff's own deposition in this case, however, at pages 65 and 66, one finds the following:

QUESTION: Did Ron [Richardson] or anybody else from the Union ever tell you that they didn't believe your story about the events of December 17th, about what happened on the night of December 17th?

ANSWER: No.

QUESTION: Did Ron or any other Union representative tell you they thought you took property from the Sheraton Carlton on December 17th?

ANSWER: Now that you ask me, I remember reading the report of security at the front office on one of the occasions that I was—

QUESTION: The report of hotel security?

ANSWER: Hotel security. On Ron's desk. He gave it to me and so I read it and he said what do you think and I said, Ron, it is a whole bunch of lies and he said, well, Ricardo, why would they lie, and I said I don't know. He said they are incriminating. And I said but they are a whole bunch of lies.

QUESTION: Was anybody else in the room with you and Ron?

ANSWER: No. He was filing something, doing some kind of paperwork while I was reading the report. I was there for about 45 minutes in his office, maybe an hour.

QUESTION: Anybody else? Anybody in the world ever tell you that Ron or any other Union representative had said that you were lying about these events?

ANSWER: No.

QUESTION: Did anybody else, anybody in the world I'm talking about, ever tell you that Ron or any other Union representative said you stole property from the Sheraton–Carlton?

ANSWER: No.

del Canto Dep. at 65–66. Thus, even Mr. del Canto, the Plaintiff in this case, says that Mr. Richardson never accused him of being a thief and never called him a liar. The deposition excerpts and letter on which Plaintiff relies to counter that undisputed fact coming from his own lips simply do not support the assertion. The Court therefore finds that there is no genuine issue as to any material fact under Rule 56(c), Fed.R.Civ.P.

III. *Analysis*

A. *The Employee Polygraph Protection Act*

■ The Court turns first to the Employee Polygraph Protection Act. 29 U.S.C. §§ 2001–2009. The statute, which was enacted in 1988, makes it unlawful for any employer, "directly or indirectly to require, request, suggest, or cause any employee or prospective employee to take or submit to any lie detector test." 29 U.S.C. § 2002(1). It also makes it unlawful for any employer to discharge, discipline or discriminate in any manner against any employee who refuses or declines to take such a test. 29 U.S.C. § 2002(3). It defines the term "employer" as "any person acting directly or indirectly in the interests of an employer in relation to an employee or prospective employee." 29 U.S.C. § 2001(2).

The Act provides that "an employer who violates this chapter shall be liable to the employee or prospective employee affected by such violation." 29 U.S.C. § 2005(c)(1). It goes on to provide that a private right of action "may be maintained against the employer in any Federal or State Court of competent jurisdiction by an employee or prospective employee." 29 U.S.C. § 2005(c)(2).

It is undisputed that neither the Union nor Mr. Richardson employed Mr. del Canto. ITT–Sheraton employed him. The question therefore becomes whether the Union or Mr. Richardson was a person "acting directly or indirectly in the interests of an employer in relation to an employee or prospective employee," language that is found in both the statute and the regulations. 29 U.S.C. § 2001(2); 29 C.F.R. § 801.2(c).

There have been only two reported cases decided since the enactment of the statute, *Rubin v. Tourneau, Inc.,* 797 F.Supp. 247 (S.D.N.Y.1992), and *Kluge v. O'Reilly Automotive, Inc.,* 1994 WL 409575 (D.Kan. Aug. 3, 1994). The *Rubin* court concluded that Congress in defining "employer" intended to adopt the construction given the term by the courts in interpreting the Fair Labor Standards Act of 1938. While the *Rubin* court noted that courts have adopted an expansive interpretation of the term "employer" under the Fair Labor Standards Act, it also noted that they have been guided by an economic reality test that considers whether the alleged employer had some degree of control over the terms and conditions of employment. Applying a similar test, the courts in *Rubin* and *Kluge* agreed that one who is not the actual employer is covered by the Act only if the person or entity acts in the interests of the employer in relation to an employee or prospective employee, that is, whether "as a matter of economic reality, that person or entity exerts some degree of control over the employer's compliance with" the statute. *Rubin v. Tourneau, Inc.,* 797 F.Supp. at 253; *see also Kluge v. O'Reilly Automotive, Inc.,* 1994 WL 409575, at *3.

On the basis of the undisputed facts before the Court in this case, one cannot conceivably draw the conclusion that the Union or Mr. Richardson was acting directly or indirectly for the hotel or that, "as a matter of economic reality" either the Union or Mr. Richardson exerted any degree of control over the hotel's compliance with the statute. They had no such economic control over the hotel. At all times the Union and Mr. Richardson were acting to pursue Mr. del Canto's interests, to get him reinstated in his job, and to pursue the arbitration against the hotel. They were not acting in the economic interests of the hotel.

Further, there is no evidence that the Union or Mr. Richardson told Mr. del Canto

that taking or passing a lie detector test were preconditions to his reinstatement and continued employment, as Mr. del Canto's own deposition testimony demonstrates. To the extent that there is any significance to the assertion that the Union and Mr. Richardson rather than the hotel, proposed the test, that proposal, if it was made, was made in the interests of Mr. del Canto and not in the interests of the hotel.

For example, the hotel would have preferred a polygraph examiner that would have cost less money but, on Mr. del Canto's behalf, the Union insisted on a polygraph examiner who was more expensive but one in whom it, on Mr. del Canto's behalf, had greater confidence. The fact that the Union was able to persuade the hotel to use that examiner in no way supports, indeed it contradicts, the notion that the Union was acting directly or indirectly in the interests of the employer. The Union and Mr. Richardson were acting in the interests of Mr. del Canto. They therefore are not covered persons under the Employee Polygraph Protection Act.

### B. *The Defamation Claim*

■ Plaintiff alleges that Mr. Richardson published statements that Mr. del Canto committed theft and was a liar and that such statements are defamatory *per se*. Under the case law in this jurisdiction, Plaintiff would have to prove that such a statement was made, that it was false, that it was defamatory, and that it was published with some degree of fault. *Washington v. State Farm Fire and Casualty Company*, 629 A.2d 24 (D.C.App.1993); *Vereen v. Clayborne*, 623 A.2d 1190 (D.C.App.1993); *Moss v. Stockard*, 580 A.2d 1011 (D.C.App.1990). The undisputed facts demonstrate that Mr. Richardson never said that Plaintiff was a liar or a thief. No statement having been made or published, there can be no defamation.

The Court has already discussed the fact that even when one indulges all inferences in favor of the Plaintiff, the Hunt letter does not indicate by its terms, or by any inferences that can legitimately be drawn from it, that Mr. Richardson made a statement to Mr. Hunt alleging or suggesting that Mr. del Canto was a thief or a liar. Despite some reference during oral argument to the fact

that counsel for Plaintiff has had conversations with Mr. Hunt about these matters and that those conversations provide further support for the allegations of defamation, counsel has not submitted any affidavit or declaration from Mr. Hunt that would lend support to Plaintiff's assertions about a conversation or conversations between Mr. Hunt and Mr. Richardson. Nor was there ever a deposition of Mr. Hunt. Whatever Mr. Hunt may or may not have said to counsel for Plaintiff suggesting that there is more than appears in his letter to support the allegation that Mr. Richardson made such statements, that evidence is not before the Court.

■ In a motion for summary judgment the Court is limited to considering, in the light most favorable to the non-moving party, only those materials that have been submitted as exhibits, affidavits or depositions. The party opposing summary judgment may not rest on mere allegations in the face of affidavit evidence but must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986); *Laningham v. U.S. Navy*, 813 F.2d at 1242–44. On the record before the Court, there is no evidence that Mr. Richardson ever made the statements attributed to him, directly or by implication, to Mr. Hunt.

■ With respect to an alleged statement by Mr. Hopkins, whatever Mr. Hopkins may have said cannot be attributed to Mr. Richardson or to any other Union representative because Mr. Hopkins was an employee of the hotel, not the Union. Moreover, when one looks specifically at what it is that Plaintiff asserts that Mr. Hopkins said, one does not find a false and defamatory statement. The affidavit of Mr. Cueva, submitted by Plaintiff, says only that Mr. Hopkins approached Mr. Cueva in the hallway of the lower lobby of the Sheraton Carlton on December 18, 1991, and told him, "I'm glad to see you here. But we were putting the money on you, that you will be the one to get caught, not Ricardo." Cueva Aff. ¶ 4. Mr. Cueva says he respond-

ed, "I haven't done anything." *Id.* ¶ 5. Mr. Cueva further states: "At the time Mr. Hopkins made these statements to me I had no knowledge of what Mr. Hopkins was referring to about del Canto." *Id.* ¶ 6. The Court cannot find that the statements by Mr. Hopkins to Mr. Cueva were false and defamatory statements or that, even if they were, they could be attributed to the Union or to Mr. Richardson. *See Vereen v. Clayborne,* 623 A.2d at 1195; *Moss v. Stockard,* 580 A.2d at 1023.

On the other hand, Mr. del Canto's own testimony at his deposition is that he had no information that Mr. Richardson said anything to anyone that would suggest that he was a thief or a liar or that anyone else ever told him that Mr. Richardson or any other Union representative accused him of lying about the events or stealing property from the hotel. On this record, there are no genuine issues of material fact in dispute on the defamation claim.

### C. Conspiracy

 The remaining count in the complaint is a conspiracy count. Under both federal and District of Columbia law, civil conspiracy is not actionable in and of itself. It is not a separate tort. *Riddell v. Riddell Washington Corp.,* 866 F.2d 1480, 1493–1494 (D.C.Cir.1989); *Halberstam v. Welch,* 705 F.2d 472, 476–478 (D.C.Cir.1983); *ILC Corp. v. Latino Newspaper, Inc.,* 747 F.Supp. 85 (D.D.C.1990). Rather, it is an agreement to participate in an unlawful act or a lawful act in an unlawful manner. And it is only where means are employed or purposes are accomplished which are themselves tortious or done in an unlawful manner, with an overt act undertaken by one of the conspirators that there is a conspiracy. *Halberstam v. Welch,* 705 F.2d at 479.

■ Having concluded that there is no cause of action in this case either under the Employee Polygraph Protection Act or under the common law of defamation, it necessarily follows, as Plaintiff's counsel conceded during oral argument, that the conspiracy count falls as well. The Court therefore grants judgment for Defendants on the conspiracy claim as well as on the claims under the Employee

Polygraph Protection Act and the common law of defamation.

In view of the foregoing, the Court GRANTS Defendants' motion for summary judgment, denies Plaintiff's motion for summary judgment, and enters judgment on all counts in favor of Defendants.

SO ORDERED.