James Stanley FALLIN, Plaintiff,

v.

MINDIS METALS, INC., Alpha Polygraph Services, Inc. and Roland Lane, Defendants.

Civ. A. No. 1:93–CV–1477–FMH.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 21, 1994.

er and is the sole owner of Alpha Polygraph Services, Inc. ("Alpha").

Plaintiff Fallin is not a public accountant, but formerly held the position "senior accountant" with Mindis Metals. Plaintiff Fallin worked at the "London Yard" in Atlanta, Georgia, where his duties included paying people who brought in scrap metal and keeping the records for these transactions.

At least for some of his employment, Plaintiff Fallin was responsible for security at the cashier's booth at the London Yard, and for the supervision of the cashier, Angie Morris ("Morris"). During the time he supervised the cashier's booth, Plaintiff Fallin was responsible for the cash in the cash drawer and in the safe.

When a customer brought in scrap metal for sale, the general practice at the London Yard was for that metal to be weighed on the scale. If the computer was working, then the scale operator would enter the type of metal, the weight, and the purchase price into the computer. When the metal was weighed on the large scale, the information entered by the scale operator would be printed onto the cashier's printer. When the small scale was used, the scale operator would print a ticket and give it to the customer.

Regardless of which scale was used, the customer would go to the cashier's booth and receive money according to the information on the printed ticket. Plaintiff's main function during his duties in the cashier's booth was to enter the printed tickets in the computer and to pay the customers. Cashier Morris's only duty was to pay the customers.

If the computer at the scale was down, then the scale operator would handwrite the tickets and send the customer to the cashier's booth with the handwritten ticket. At the cashier's booth, Plaintiff and Morris would enter the sale data into their computers. Plaintiff had a secret password to his computer, but does not know if anybody else knew his password. Plaintiff knew Morris's password.

On May 20, 1991, money was paid for three sales, although apparently there was not any

Michael Alan Caldwell, Atlanta, GA, for plaintiff.

John Melvin England, Atlanta, GA, for defendant.

## *ORDER*

HULL, District Judge.

This action is before the Court on Defendants Alpha Polygraph Services, Inc. and Roland Lane's (1) Motion to Extend Time for Filing of the Pre–Trial Order [50–1], (2) Motion for Summary Judgment [51–1], and (3) Motion to Dismiss [63–1].

### I. *Factual Background*

Plaintiff Fallin is a former employee of Defendant Mindis Metals, Inc. ("Mindis Metals"). Defendant Mindis Metals is in the scrap metal recycling business. Defendant Roland Lane ("Lane") is a polygraph examin-

metal purchased. The computer showed the three sales. There were handwritten tickets showing the sales had been made. An inventory showed that money was paid to a customer, but the metal, which ostensibly had been purchased, could not be found.

The next day, May 21, 1991, an investigation began under the auspices of the company comptroller, Ray Linton. That same day, there were two entries in the computer for the sale of metal, which were then reversed. Nobody knows who reversed the computer entries. There is some dispute over how many other people had the ability to enter a sale and then reverse it. There is also some dispute over whether the two entries were error or fraud.[1] Regardless of these minor disputes, Plaintiff understood he was a suspect for the theft of the money because of his access to the cash, knowledge of the computer system, and ability to reverse sale entries.

On June 6, 1991, Defendants Alpha and Roland Lane administered a polygraph test to Plaintiff Fallin. Defendants reported that the results from the polygraph indicated that Plaintiff Fallin had been deceptive in his answers. On June 11, 1991, Defendants Alpha and Lane administered a second polygraph to Plaintiff Fallin. Again, Defendants reported that the results from the polygraph indicated that Plaintiff Fallin had been deceptive in his answers.

Polygraph tests were also administered to Angie Morris, the cashier, on June 6, 1991 and June 11, 1991. Defendants reported that Ms. Morris showed deception during her first polygraph test; however, on the second test, Defendants reported that Ms. Morris did not show any deception.

Plaintiff Fallin was fired from his job after the results from the second polygraph test were provided to Defendant Mindis Metals.

Ms. Morris was not fired, and returned to her position as a cashier.

The parties dispute whether Ray Linton, the company comptroller in charge of the investigation, decided to fire Plaintiff Fallin before or after the polygraph examinations. In any event, Plaintiff Fallin was fired after the June 11, 1991 polygraph examination. On January 16, 1992, Plaintiff Fallin was administered a third polygraph examination, by somebody other than Defendants Alpha and Lane, which Plaintiff alleges resulted in a favorable reading. Plaintiff Fallin alleges that he took the third polygraph examination at the insistence of Mindis Metals, and with the hope of regaining his job with Mindis Metals. Despite his allegedly favorable response to the third polygraph examination, Plaintiff Fallin was not re-hired by Mindis Metals.

On June 1, 1993, Plaintiff Fallin brought this action in the State Court of Fulton County, Georgia, alleging three separate counts for recovery. In Count One, Plaintiff Fallin alleged that Mindis Metals wrongfully discharged Plaintiff in violation of the Employee Polygraph Protection Act (the "E.P.P.A."), 29 U.S.C. § 2001 *et seq.*

Count Two alleges that Defendants Alpha and Lane are liable to Plaintiff for their negligent performance of the polygraph examinations which resulted in the loss of Plaintiff Fallin's job. Specifically, Plaintiff Fallin claims that Defendants Alpha and Lane violated the E.P.P.A. and the Georgia Polygraph Examiners Act, O.C.G.A. (the "G.P.E.A.") § 43–36–12 *et seq.*, as well as violating the duties of reasonable care Defendants owed to Plaintiff Fallin.

Count Three alleges that Mindis Metals, Alpha and Lane all performed their respec-

1. Plaintiff Fallin makes some rather technical denials of Defendants Alpha and Lane's Statement of Material Facts to Which there is No Dispute [51–1]. For instance, Defendants' state that Plaintiff was "very knowledgeable about the computer system." Plaintiff's response is "Plaintiff denies that he was very knowledgeable about an undefined computer system." *See* [58–1]. Defendant also states that "[t]he cash security procedure was under plaintiff's supervision." Plaintiff responds, "Plaintiff denies this statement because Defendant's statement is unlimited

in time." After reviewing the discovery material (deposition testimony and exhibits) filed as of record, the Court finds that Plaintiff's general objections are not very helpful in narrowing the case to those genuine issues of material fact which should be tried.

There is also some dispute among the parties about how knowledgeable Plaintiff was with the computer system, and whether Plaintiff's duties included controlling access to the cash and supervision of the cash security procedure.

tive wrongful acts in a wilful, malicious, wanton, and oppressive manner which subjects them to punitive damages.

On June 28, 1993, Defendant Mindis Metals removed the action to this Court. Defendant Mindis Metals asserted federal question jurisdiction to support the removal; namely, Plaintiff's allegations, in Count One, that Mindis Metals had violated the E.P.P.A., 29 U.S.C. § 2001 *et seq.* Defendants Alpha and Lane apparently consented to the removal of this action.

On March 2, 1994, Mindis Metals and Plaintiff Fallin entered into a Release and Waiver of Claims, whereby Mindis Metals and Plaintiff Fallin dismissed with prejudice their respective claims against each other.[2] Judgment was entered for $140,000 against Mindis Metals and in favor of Plaintiff Fallin.

As the case now stands, Plaintiff Fallin, a Georgia domiciliary, is suing Defendants Alpha and Lane, both Georgia domiciliaries.[3]

II. *Defendants Alpha and Lane's Motion for Summary Judgment*

A. *Standard of Review*

Rule 56(c), Fed.R.Civ.P., defines the standard for summary judgment: Courts should grant summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." The general rule of summary judgment in the Eleventh Circuit states that the moving party must show the court that no genuine issue of material fact should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991). "[U]nless the movant for summary judgment meets its burden under Rule 56, the obligation of the opposing party does not arise even if no opposing evidentiary material is presented by the party opposing the motion." *Id.*

While all evidence and factual inferences are to be viewed in a light most favorable to the nonmoving party, *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510.

Where neither party can prove either the affirmative or the negative of an essential element of a claim, the movant meets its burden on summary judgment by showing that the opposing party will not be able to

---

2. In its answer, Defendant Mindis Metals filed a counterclaim against Plaintiff Fallin and cross-claims against Defendants Alpha and Lane. Defendants Alpha and Lane filed cross-claims against Defendant Mindis Metals. In December, 1993, Defendant Mindis Metals dismissed its counterclaim against Plaintiff Fallin. Additionally, Defendant Mindis Metals and Defendants Alpha and Lane dismissed their respective cross-claims against each other. At that same time, Final Judgment was entered against Mindis Metals on Plaintiff Fallin's claims. [46–1]. On March 2, 1994, the Final Judgment was set aside and the Consent Final Judgment was entered against Mindis Metals on Count Four of Plaintiff Fallin's complaint [57–1], which was a claim for intentional and negligent infliction of emotional distress [56–1]. Judgment was entered for $140,000 against Mindis Metals, and Plaintiff Fallin released his other claims against Mindis Metals.

3. When the case was first removed to this Court, Plaintiff Fallin had a claim under the E.P.P.A., against Defendants Mindis Metals, Alpha and Lane, and thus, federal question jurisdiction existed over all Defendants. Plaintiff Fallin also had state tort law claims against Defendants Alpha and Lane.

Since Plaintiff Fallin is a Georgia domiciliary and Defendants Alpha and Lane are both Georgia domiciliaries, complete diversity does not exist. Thus, there is no independent original federal jurisdiction for Plaintiff Fallin's state tort law claims against Defendants Alpha and Lane. Those non-diverse state law claims are before the Court only under the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). Plaintiff Fallin's federal question claim, in Count Two, against Defendants Alpha and Lane is now the only support for jurisdiction over Plaintiff Fallin's non-diverse state tort claims.

meet its burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). In *Celotex,* the Supreme Court interpreted Rule 56(c) to require the moving party to demonstrate that the nonmoving party lacks evidence to support an essential element of its claim. Thus, the movant's burden is "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

In either situation, only when the movant meets this burden, does the burden shift to the opposing party, who must then present evidence to establish the existence of a material issue of fact. *Id.* After the movant successfully discharges its burden, the nonmoving party must go beyond the pleadings and submit evidence in the form of affidavits, depositions, admissions and the like, to demonstrate that a genuine issue of material fact does exist. *Id.*

## B. *The Employee Polygraph Protection Act*

Defendants Alpha and Lane filed this Motion for Summary Judgment, contending that the Employee Polygraph Protection Act (the "E.P.P.A.") and the Georgia Polygraph Examiners Act (the "G.P.E.A.") do not apply to them. Defendants also claim that Plaintiff Fallin cannot demonstrate that any negligent conduct committed by Defendants Alpha or Lane was the proximate cause of Plaintiff Fallin's injuries.

Under the phrasing of Plaintiff Fallin's Complaint [1–1], Count Two incorporates Count One and appears to allege that Defendants Alpha and Lane's negligent administration of two separate polygraph examinations to Plaintiff Fallin, violated the E.P.P.A., the G.P.E.A. and general state tort law.

The Court will address first whether the Employee Polygraph Protection Act applies to Defendants Alpha and Lane. The E.P.P.A. expressly limits the ability of employers to subject employees to polygraph examinations, as follows:

> Except as provided in sections 2006 and 2007 of this title, it shall be unlawful for any employer engaged in or affecting commerce or in the production of goods for commerce—
>
> (1) directly or indirectly, to require, request, suggest, or cause any employee or prospective employee to take or submit to any lie detector test;
>
> . . . .

29 U.S.C. § 2002. Throughout Title 29, the restrictions and liabilities are imposed only on "employers," and not on any other entities, including polygraph examiners. Indeed, Section 2005 creates the federal private cause of action imposing liability for violations of the E.P.P.A., and confines liability to only "employers," as follows:

> An employer who violates this chapter shall be liable to the employee or prospective employee affected by such violation. Such employer shall be liable for such legal or equitable relief as may be appropriate, including, but not limited to, employment, reinstatement, promotion, and the payment of lost wages and benefits.

29 U.S.C. § 2005(c)(1). The E.P.P.A. creates liability against the employer and not against other entities. The question, thus, becomes who is an "employer" for purposes of the E.P.P.A.

Section 2001(2) defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee." 29 U.S.C. § 2001(2). More importantly, the Secretary of Labor specifically excludes a polygraph examiner who is hired to administer a polygraph examination from the definition of "employer," as follows:

> The term *employer* means any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee. A polygraph examiner either employed for or whose services are retained for the sole purpose of administering polygraph tests ordinarily would not be deemed an *employer* with respect to the examinees.

Application of the Employee Polygraph Protection Act of 1988, 29 C.F.R. § 801.2(c)

(1992); 56 Fed.Reg. 9046, 9048 (1991) (codified at 29 C.F.R. § 801.2(c)).[4]

Defendants Lane and Alpha were hired by Mindis Metals to perform a discrete task; namely, perform two polygraph examinations on Plaintiff Fallin as part of Mindis Metals' overall investigation into the theft at the London Yard. Under the Secretary of Labor's implementing regulations, Defendant Roland Lane and his company, Defendant Alpha Polygraph Services, Inc., are expressly excluded from the E.P.P.A.'s definition of "employer."[5]

Two cases have examined the meaning of "employer" in the context of a plaintiff suing the actual polygraph examiner. In *Rubin v. Tourneau, Inc.*, 797 F.Supp. 247, 249–53 (S.D.N.Y.1992), the plaintiff sued the polygraph examiner under the E.P.P.A. After analyzing the term "employer" in the E.P.P.A. and comparing the E.P.P.A. to the Fair Labor Standards Act of 1938, the court found that a polygraph examiner could be treated as an "employer," under the E.P.P.A., only where, "as a matter of economic reality, [the polygraph examiner] exerts some degree of control over the employer's compliance with EPPA." *Rubin*, 797 F.Supp. at 253.

The *Rubin* court found that where a polygraph examiner exerts control over which employees are examined and when employees should be subjected to polygraph examinations, then the polygraph examiner is acting, as a matter of economic reality, as though it were the employer, and liability may be imposed under the E.P.P.A. against the polygraph examiner, as follows:

> if an examiner decides which employees may be polygraphed and under what circumstances polygraph examinations are permissible, that examiner is acting 'directly or indirectly in the interest of an employer in relation to an employee or prospective employee.'

*Rubin*, 797 F.Supp. at 253. The court explains that if a polygraph examiner is hired simply to perform polygraph examinations on employees, then the E.P.P.A., by its very terms, does not apply to that polygraph examiner, as follows:

> On the other hand, if the examiner is hired for the sole purpose of administering examinations at the direction of the employer, then, as a matter of economic reality, that examiner does not exert control over the employer's compliance with EPPA and, therefore, is not subject to suit under 29 U.S.C. § 2005(c)(1).

*Id.*

More recently, in *Kluge v. O'Reilly Automotive, Inc.*, No. 94–2159, 1994 WL 409575, 1994 U.S.Dist. LEXIS 10854 (D.Kan. Aug. 2, 1994), the district court in Kansas considered the meaning of "employer" under the E.P.P.A. The court in *Kluge*, noted there were not any allegations that the polygraph examiner had decided which employees should be examined or that the polygraph examiner had provided the employer with any guidance in how to comply with the E.P.P.A., as follows:

> There are no allegations which would indicate that [the polygraph examiner] played any role in the investigation beyond simply administering the polygraph test and interviewing some employees. There is no allegation that [the polygraph examiner] provided any expertise or advice to [the employer] regarding compliance with the EPPA, or that [the employer] relied on [the polygraph examiner] in any way to insure that it complied with the EPPA. Plaintiff has not alleged that [the polygraph examiner] consulted with [the employer] in deciding which employees would be given the test or that [the polygraph examiner] provided guidance to [the employer] regarding EPPA's requirements.

---

4. The Secretary of Labor has the power to issue rules and regulations to implement the E.P.P.A. 29 U.S.C. § 2004(a)(1).

5. Where a statute is ambiguous, then the Court must defer to the reasonable construction of the statute by the implementing agency, provided the agency's interpretation of the statute is reasonable and not manifestly contrary to the Congressional intent. *See Chevron, U.S.A., Inc. v. Natural Resources Defense*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *State of Georgia, Department of Medical Assistance v. Shalala*, 8 F.3d 1565, 1567–68 (11th Cir.1993).

*Kluge v. O'Reilly Auto., Inc.*, No. 94–2159, 1994 WL 409575 1994 U.S.Dist. LEXIS 10854, at *9–10 (D.Kan. Aug. 2, 1994). Instead the court concluded that "[t]he facts as alleged by plaintiffs do not support an inference that [the polygraph examiner] did more than merely administer the polygraph test at [the employer's] direction." *Id.* at *3, 1994 U.S.Dist. LEXIS 10854 at *10.

Under *Rubin* and *Kluge,* the term "employer" is defined by considering, as a matter of economic reality, whether the polygraph examiner exerts some control over the employer's compliance with the E.P.P.A. When examining the degree of control necessary to treat an independent polygraph examiner as an "employer" for purposes of the E.P.P.A., the courts looked to factors such as, who decided what employees would be examined, under what circumstances examinations should be administered, and did the examiner decide whether an employee would be disciplined or merely report the results of the polygraph. *See Kluge,* No. 94–2159, 1994 U.S.Dist. LEXIS, at *9–10; *Rubin,* 797 F.Supp. at 252–53. According to *Rubin* and *Kluge,* the critical question is whether the polygraph examiner stepped beyond its role as an independent entity and actually exerted control, as a matter of economic reality, over the employer's compliance with the E.P.P.A. The courts held that if the answer is yes, then the polygraph examiner should be treated as an employer under the E.P.P.A.; however, if the answer is no, then the Secretary of Labor's implementing regulations for the E.P.P.A. expressly exclude entities which merely perform the polygraph examination.

■ An independent polygraph examiner is not an "employer" under the E.P.P.A. just because an employer's liability arises from acts taken by the polygraph examiner. Rather, the polygraph examiner must, as a matter of economic reality, exert such control over the employer's compliance with the E.P.P.A. that the examiner may be said to be "acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee."

■ The courts in *Rubin* and *Kluge* decided motions to dismiss, and while agreeing upon the meaning of "employer," the courts reached different conclusions under their respective facts. The posture of this case is well past the pleading stage. While the Court must take all facts and reasonable inferences therefrom in the light most favorable to the non-moving party, mere allegations or statements unsupported by evidence are not sufficient to avoid summary judgment.[6]

Here, there is no evidence that Defendants Alpha and Lane chose Plaintiff Fallin for the polygraph examination. There is no evidence that Defendants Alpha and Lane provided criteria for choosing which employees should undergo polygraph examinations or that Defendants Alpha and Lane were hired to ensure Mindis Metals complied with the E.P.P.A. Instead, the evidence in the record shows that Ray Linton, comptroller for Mindis Metals, was in charge of the investigation into the theft from the London yard, and that Defendants Alpha and Lane were hired to perform polygraph examinations on Plaintiff Fallin and Ms. Morris.

Based upon an examination of the record, and viewing the facts and inferences therefrom in the light most favorable to Plaintiff Fallin, the Court finds that Defendants Alpha and Lane were hired by Mindis Metals only to administer polygraph examinations and that Defendants Alpha and Lane only administered polygraph examinations. Plaintiff Fallin has failed to demonstrate that a genuine issue of material fact exists as to whether Defendants Alpha and Lane, as a matter of economic reality, exerted control over Mindis Metals's compliance with the E.P.P.A. Since Plaintiff Fallin has failed to meet its burden on one of the elements of its E.P.P.A. claim against Defendants Alpha and Lane, the Court **GRANTS** Defendants Alpha

---

6. "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511.

and Lane's Motion for Summary Judgment on Plaintiff Fallin's E.P.P.A. claim [51–1].

### C. Supplemental Jurisdiction Over the Remaining State Law Claims

Given the Court's above ruling, Plaintiff Fallin's only remaining claims against Defendants Alpha and Lane are state tort law claims. The Court *sua sponte* may raise a jurisdictional defect at any time. *Barnett v. Bailey*, 956 F.2d 1036, 1039 (11th Cir.1992); *Fitzgerald v. Seaboard System R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir.1985). The Court, *sua sponte*, will examine whether it continues to have jurisdiction over this action.

Since Plaintiff Fallin is a Georgia domiciliary and Defendants Alpha and Lane are both Georgia domiciliaries, complete diversity does not exist. *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Thus, there is no basis for original federal jurisdiction over Plaintiff Fallin's state tort law claims against Defendants Alpha and Lane. Those state law claims were previously properly before the court as supplemental claims supported by Plaintiff Fallin's federal question claim. *See* 28 U.S.C. § 1367(a). However, with the dismissal of Plaintiff Fallin's E.P.P.A. claim, there is no independent original federal jurisdiction to support the court's exercise of supplemental jurisdiction over the state claims against Defendants Alpha and Lane.

The Court must now inquire into whether a jurisdictional basis exists to support these state law claims in federal court. The Court's inquiry is twofold. First, the Court must decide whether it has the power to hear the state tort claims. Second, if the Court does have the power to hear the state claims, the Court must decide whether, in its discretion, it will retain jurisdiction over the state claims.

■ The question of whether subject matter jurisdiction exists is measured as of the time the petition for removal was filed. *In re Carter*, 618 F.2d 1093 (5th Cir.1980). As of the time of removal, Plaintiff Fallin was a Georgia domiciliary and Defendants Alpha and Lane were also Georgia domiciliaries. At the time of removal, Plaintiff Fallin had a federal question claim against Defendants Alpha and Lane and Plaintiff Fallin's state tort claims against those two defendants were a proper exercise of the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a); *see also Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1567 (11th Cir. 1994). The dismissal of Plaintiff Fallin's underlying E.P.P.A. claim does not deprive the Court of supplemental jurisdiction over the remaining state law claims. *See Palmer*, 22 F.3d at 1568; *Edwards v. Okaloosa County*, 5 F.3d 1431, 1433–35 (11th Cir.1993). Indeed, under 28 U.S.C. § 1367(c), the district court has the discretion to decline to exercise supplemental jurisdiction over a non-diverse state tort claim, where the Court has dismissed all claims over which it had original jurisdiction, but is not required to dismiss, or in this instance remand, the case. *See Palmer*, 22 F.3d at 1567–68.

As the Eleventh Circuit made clear in *Palmer*, once a court decides that it has power to exercise supplemental jurisdiction under Section 1367(a), then the court should exercise that jurisdiction, unless Section 1367(b) or (c) applies to limit the exercise.[7] In this case, Section 1367(c) applies because the Court "has dismissed all claims over which it has original jurisdiction;" namely, Plaintiff Fallin's E.P.P.A. claim against Defendants Alpha and Lane. *See* 28 U.S.C. § 1367(c). While 28 U.S.C. § 1367(c) permits a court to dismiss an action where any of the four factors listed in Section 1367(c) are met, the Court is also guided by other factors. Where Section 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the Court's discretion to exercise supplemental jurisdiction. *See Palmer*, 22 F.3d at 1569; *Executive Software N. Am. v. U.S.Dist. Court*, 15 F.3d 1484, 1493 (9th Cir.1994).

Defendants Alpha and Lane have filed a Motion for Dismissal of Plaintiff's Action on

---

7. 28 U.S.C. § 1367 codifies the traditional concepts of ancillary and pendent jurisdiction under the name supplemental jurisdiction. Simply explained, section 1367(a) grants the federal judiciary Congressional approval to extend supplemental jurisdiction to the limits of the Constitution. Section 1367(b) and (c) reduce that Congressional grant.

the Ground of Extinguishment by Satisfaction [63–1]. Defendants claim that when Plaintiff Fallin accepted judgment under Federal Rule of Civil Procedure 68, he accepted full satisfaction for his injury and thus should be barred from pursuing his claims against Defendants Alpha and Lane. Plaintiff Fallin responds that Defendants Alpha and Lane misinterpret Georgia case law on the subject and that Plaintiff Fallin's acceptance of judgment from Defendant Mindis Metals was a release and not full satisfaction. In any event the correct ruling turns upon an interpretation of Georgia law. While the question of whether Plaintiff Fallin's acceptance of judgment from Mindis Metals is not the sort of novel or complex issue of state law, contemplated by Section 1367(c)(1), neither is the distinction between release and satisfaction, with joint tort-feasors, well-settled in Georgia law.

State courts, not federal courts, should be the final arbiters of state law. *Hardy v. Birmingham Bd. of Educ.,* 954 F.2d 1546, 1553 (11th Cir.1992). When coupled with the Court's discretion to exercise supplemental jurisdiction under section 1367(c), this Court finds that the state claims remaining in this action, along with any issues of unresolved state law, are best determined by the Georgia courts.

The Court (1) finds that there is not any original federal jurisdiction over the state claims remaining in this action, (2) declines, in the Court's discretion under 28 U.S.C. § 1367(c), to exercise supplemental discretion, and thus (3) finds that, under 28 U.S.C. § 1447(c), the Court does not have subject matter jurisdiction over this action, and this case should be remanded to state court. Therefore, this action is **REMANDED** to the State Court of Fulton County, Georgia.

Based upon the remand to the State Court for Fulton County, Georgia, the Court rules on the remaining motions as follows:

(1) Defendants Alpha and Lane's Motion to Extend Time for Filing Pre–Trial Order [50–1] is **DENIED,** without prejudice, as **MOOT** in Federal Court. This issue will be decided by the State Court.

(2) Defendants Alpha and Lane's Motion for Summary Judgment has already been Granted on Plaintiff Fallin's E.P.P.A. claim; therefore, Defendants Alpha and Lane's Motion for Summary Judgment on Plaintiff Fallin's state law claims [51–1] is **DENIED,** without prejudice, as **MOOT** in Federal Court. These state law issues will be decided by the State Court.

(3) Defendants Alpha and Lane's Motion to Dismiss the state law claims [63–1] is **DENIED,** without prejudice, as **MOOT** in Federal Court. These state law issues will be decided by the State Court.

### III. *Conclusion*

The Court **GRANTS** in part and **DENIES** in part Defendants Alpha and Lane's Motion for Summary Judgment [51–1]. The Court **GRANTS** Defendants Alpha and Lane's Motion for Summary Judgment [51–1] on Plaintiff Fallin's E.P.P.A. claim. Defendants Alpha and Lane's Motion for Summary Judgment on Plaintiff Fallin's state law claims [51–1] is **DENIED,** without prejudice, as **MOOT.**

Defendants Alpha and Lane's Motion to Extend Time to File the Pre–Trial Order [50–1] is **DENIED,** without prejudice, as **MOOT.** Defendants Alpha and Lane's Motion to Dismiss [63–1] is **DENIED,** without prejudice, as **MOOT.**

The Court **REMANDS** the remaining state law claims in this action to the State Court of Fulton County, Georgia.

**SO ORDERED.**