Sherwood JAMES, Plaintiff,

v.

PROFESSIONALS' DETECTIVE
AGENCY, INC. and William
E. Craven, Defendants.

No. 94 C 4115.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 24, 1995.

Timothy Huizenga, Lawrence Davis Wood, Legal Assistance Foundation of Chicago, Chicago, IL, for plaintiff.

Peter R. Bulmer, Hopkins & Sutter, P.C., Chicago, IL, for Professionals' Detective Agency, Inc.

Thomas C. Hofbauer, Jeffrey T. Kubes, Hinshaw & Culbertson, Chicago, IL, for defendants.

**1014**

*MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Now before the court is defendant William E. Craven's ("Craven") motion to dismiss the complaint of the plaintiff, Sherwood James ("James"). The motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. For the reasons set forth below, Craven's motion is denied.

## I. BACKGROUND

The following is a summary of the facts in the light most favorable to the plaintiff. In late January of 1993, Professionals' Detective Agency, Inc. ("Professionals'") hired James as a security guard. While employed by Professionals', James was assigned to work as a security guard at Leslie Hindman Auctioneers. On or about April 17, 1993, there was a theft of money and jewelry from the second floor lunchroom, at which time numerous customers and employees of Leslie Hindman, including James, were present in the building. On that day, James had been assigned to work on the fifth floor of the building. Additionally, Professionals' had assigned at least three other employees to work on other floors of the building. Later that day, James' supervisor, Mr. Lad, told him that he was temporarily suspended as a result of the theft in the building and requested that James submit to a polygraph test to determine whether he had been involved.

James agreed and the polygraph was administered by defendant Craven on May 7, 1993. Before administering the test, neither Professionals' nor Craven provided James with a written list of questions to review. During the test, Craven asked questions unrelated to the theft which needlessly degraded and intruded on the plaintiff. After the test, James was not given a copy of the results of the polygraph nor was he given any written conclusions. Furthermore, Professionals' failed to interview James regarding the results of the test and later discharged him as a consequence of the polygraph results.

James charges defendant Professionals' with violations of the Employee Polygraph Protection Act of 1988 ("EPPA"), 29 U.S.C. §§ 2002(1), 2002(3), for requesting that he submit to a polygraph test and for discharging him on the basis of the results of the test. Additionally, James charges defendants Professionals' and Craven with violations of 29 U.S.C. § 2007 for asking questions intended to degrade or needlessly intrude on him during the test, and for asking questions that were not presented in writing for his review prior to the test.

Defendant Craven has moved to dismiss the plaintiff's claim as it pertains to him because Craven was not plaintiff's "employer" as that term is used in the EPPA and is thus not subject to any civil action under the EPPA. The plaintiff, meanwhile, maintains that Craven does fit under the EPPA's definition of an employer.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss for failure to state a claim is granted only where it is beyond doubt that the plaintiff is unable to prove any set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must take all well pleaded facts and allegations as true, and must view them in the light most favorable to the plaintiff. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Furthermore, plaintiff is entitled to all reasonable inferences that may be drawn from the complaint. *Id.*

## III. DISCUSSION

Congress passed the EPPA after determining that prospective and current employees were often denied employment or discharged unjustly as a result of the misuse of polygraph tests. S.REP. No. 284, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 726; H.R. CONF.REP. No. 659, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 749. The EPPA makes it illegal for an employer to require or request any employee or prospective employee to take or submit to any lie detector test. 29

U.S.C. § 2002(1). Employers are also prohibited from discharging any employee on the basis of the results of any lie detector test. *Id.* at § 2002(3)(B).

The general prohibition against the use of polygraph tests does not apply if the test is administered in connection with an ongoing investigation involving economic loss or injury to the employer's business, such as theft or embezzlement. 29 U.S.C. § 2006. In that case, the exemption applies only if the employee had access to the missing property, the employer had a reasonable suspicion that the employee was involved in the incident, and the employer executed a written statement setting forth, *inter alia,* the details of the incident and the basis for the employer's reasonable suspicion. *Id.* Furthermore, the exemption does not apply if the employer's actions do not meet a number of restrictions. *Id.* at § 2007. These restrictions are designed to eliminate adverse employment action based solely on lie detector results, protect employees' privacy rights, and reduce the possibility of inaccurate test results. Charles P. Cullen, *The Specific Incident Exemption of the Employee Polygraph Protection Act: Deceptively Straightforward,* 65 NOTRE DAME L.REV. 262, 276 (1990).

The EPPA provides for both public and private enforcement. 29 U.S.C. § 2005. The private enforcement provision creates an explicit right of action for employees against "[a]n employer who violates [the EPPA] ... for such legal and equitable relief as may be appropriate, including, but not limited to, employment, reinstatement, promotion, and the payment of lost wages and benefits." *Id.* at § 2005(c)(1) (emphasis added). The Act defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee." *Id.* at § 2001(2). Pursuant to its duty to promulgate "rules and regulations as may be necessary or appropriate to carry out [the EPPA]," *Id.* at § 2004(a), the Department of Labor issued a regulation which states:

> The term *employer* means any person acting directly or indirectly in the interest of an employer in relation to an employee or

prospective employee. A polygraph examiner either employed for or whose services are otherwise retained for the sole purpose of administering polygraphs ordinarily would not be deemed an *employer* with respect to the examinees.

29 C.F.R. § 801.2(c) (emphasis in original).

[4]. In his motion to dismiss, defendant Craven contends that the plaintiff has not alleged any facts to establish a relationship between Professionals' and Craven, except to the extent that Craven conducted a polygraph exam upon the plaintiff. Additionally, the defendant states that the plaintiff has failed to allege that the defendant had any authority to direct Professionals' termination of the plaintiff. Therefore, Craven argues that he is not an "employer" within the meaning of the Act and should be dismissed from the case.

The United States District Court for the Southern District of New York, in *Rubin v. Tourneau, Inc.,* 797 F.Supp. 247 (S.D.N.Y. 1992), was the first court to address the scope of the term "employer" as used by the EPPA. In that case, several watches disappeared from the inventory of a Manhattan retailer. The retailer hired a polygraph testing service to assist in the investigation and several polygraph exams were taken. Two of the employees alleged that during the exams they were forced to answer personal and degrading questions and suffered great embarrassment, humiliation and mental distress. After they refused to take another exam, the retailer fired them. The two employees brought suit against the retailer and the polygraph testing service for violations of the EPPA. The polygraph testing service then moved to dismiss on the ground that it was not the plaintiffs' employer.

■ After a lengthy analysis, the *Rubin* court found that a person or entity is an "employer" for purposes of the EPPA "if, as a matter of economic reality, that person or entity exerts some degree of control over the employer's compliance with the EPPA." *Id.* at 253.[1] The court then gave examples of

---

1. The *Rubin* court also addressed the validity of

the regulation issued by the Department of La-

when a polygraph examiner would and would not fit under this definition. The court stated: ·

> [I]f an examiner decides which employees may be polygraphed and under what circumstances polygraph examinations are permissible, that examiner is "acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee." On the other hand, if the examiner is hired for the sole purpose of administering examinations at the direction of the employer, then, as a matter of economic reality, that examiner does not exert control over the employer's compliance with EPPA and, therefore, is not subject to suit under 29 · U.S.C. § 2005(c)(1).

*Id.* Finally, the court denied the examiner's motion to dismiss when, after drawing all inferences in favor of the plaintiffs, it found that it was unclear whether the examiner had any role in the investigation beyond administering the examinations.

Two other courts have also considered a polygraph examiner's potential for liability under the EPPA. *Fallin v. Mindis Metals, Inc.,* 865 F.Supp. 834 (N.D.Ga.1994); *Kluge v. O'Reilly Automotive, Inc.,* 1994 WL 409575 (D.Kan. August 3, 1994). Both courts adopted the "economic reality" test set out in *Rubin.* In *Fallin,* the court granted the examiner's motion for summary judgment after holding that the examiner did not exert any control over the employer's compliance with the EPPA. *Fallin,* 865 F.Supp. at 840. Meanwhile, in *Kluge,* the court granted the examiner's motion to dismiss only after holding that plaintiff's complaint contained no allegations whatsoever that the examiner was an employer as contemplated by the EPPA. *Kluge,* 1994 WL 409575 at *3.

In this case, the plaintiff James alleges that Craven, the polygraph examiner, acted in the interest of Professionals' in relation to James. Furthermore, James alleges that Craven failed to provide James with a writ-

ten list of the questions before the polygraph test and asked questions that needlessly degraded and intruded on him during the test. Holding all inferences in favor of the plaintiff, plaintiff may be able to show that the examiner, as a matter of economic reality, exerted some degree of control over the employer's compliance with the EPPA. Therefore, the defendant's motion is denied. However, the examiner must have done more than simply administer the polygraph test upon the plaintiff. *See Fallin,* 865 F.Supp. at 840 ("An independent polygraph examiner is not an 'employer' under the EPPA just because an employer's liability arises from acts taken by the polygraph examiner."). If not, defendant Craven should file a summary judgment motion with the court.

### CONCLUSION

Defendant Craven's motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) is denied.

---

bor, set out in 29 C.F.R. § 801.2(c). *Rubin,* 797 F.Supp. at 250–51. After analyzing the agency's interpretation of the statute in accordance with the standard set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 ·U.S.

·837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the court upheld the regulation because the Department's interpretation was reasonable. *Id.* This · court agrees and also upholds the regulation.