**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 29, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARK FERNANDEZ; DON ABREU,

Plaintiffs-Appellants,

v.

MORA-SAN MIGUEL ELECTRIC
COOPERATIVE, INC.; FOURTH
JUDICIAL DISTRICT ATTORNEY'S
OFFICE; LUCERO PROFESSIONAL
SERVICES, LTD.; CARL ARMIJO, in
his individual and official capacities,

Defendants-Appellees,

and

MORA COUNTY SHERIFF'S
OFFICE; ERNESTO GONZALES;
LEVI ALCON; YVETTE ALCON,

Defendants.

No. 05-2130

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-03-1334 RB/WDS)**

---

Submitted on the briefs:[*]

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

(continued...)

Michael E. Mozes, Law Offices of Michael E. Mozes, P.C., Albuquerque, New Mexico, for Plaintiff-Appellants.

Jerry A. Walz, Walz and Associates, Cedar Crest, New Mexico, for Defendants-Appellees Fourth Judicial District Attorney's Office and Carl Armijo.

David A. Rammelkamp, Elizabeth A. Heaphy, Rammelkamp, Muehlenweg & Cordova, P.A., Albuquerque, New Mexico, for Defendant-Appellee Lucero Professional Services, Ltd.

---

Before **BRISCOE**, **McKAY**, and **BRORBY**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Mark Fernandez and Don Abreu appeal the district court's pre-trial disposition of certain claims in this suit against polygraph examiner Lucero Professional Services (LPS), the New Mexico Fourth Judicial District Attorney's Office (DAO), the DAO's chief inspector Carl Armijo, and Fernandez and Abreu's former employer Mora-San Miguel Electric Cooperative, Inc. (the Co-op). Specifically, both Fernandez and Abreu appeal the district court's grant of summary judgment to LPS under the Employee Polygraph Protection Act (EPPA), 29 U.S.C. § 2001-2009. Abreu also appeals (1) the district court's grant of judgment on the pleadings to Armijo and the DAO on his state-law tort claim

---

[*](...continued)
therefore ordered submitted without oral argument.

-2-

of conspiracy to violate constitutional rights, and (2) the district court's grant of summary judgment to the Co-op and Armijo on his 42 U.S.C. § 1983 claim that they violated his constitutional and statutory rights. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## I.

Fernandez and Abreu were employed by the Co-op. During the weekend of April 11-13, 2003, one of the Co-op's air compressors disappeared. The Co-op notified the Mora County Sheriff's Office (MCSO), and Officer Ray Cordova began an investigation. Because the air compressor had disappeared from a yard with a locked gate that was not forced, the investigation focused on the Co-op's employees. Near the end of June, the DAO became involved in the investigation.

When the investigation failed to yield results, the Co-op decided to have suspected employees take polygraph tests. In early July, the Co-op's attorney, Nicholas Leger, contacted Eric Lucero, the principal of LPS, and requested that LPS conduct polygraph examinations of some of the Co-op's employees. Lucero stated that he could not test employees for the Co-op, but that he would administer polygraph tests to Co-op employees if requested in conjunction with a criminal investigation.

Within a few days, the DAO's chief investigator, Carl Armijo, called Lucero and requested LPS conduct polygraph tests of the Co-op's employees. The day before the examinations, Leger sent Lucero a memorandum describing

the facts known to the Co-op and setting the schedule for the examinations. Lucero then administered polygraph tests to four Co-op employees, including Fernandez and Abreu. Fernandez and Abreu failed the examinations.

Lucero sent his report to Armijo and Cordova, and he sent LPS's bill to Armijo. Leger contacted Lucero and told him that the DAO would not pay for the tests. He told Lucero that the Co-op would pay for the tests and that Lucero should send him an invoice. When Leger asked for the results of the tests, Lucero told him that he could not disclose the test results to the Co-op. He suggested that Leger talk to Armijo, because the DAO might release the test results to the Co-op as a crime victim. The DAO provided the results of the tests to the Co-op, which then terminated Fernandez and Abreu's employment.

Fernandez and Abreu sued the Co-op, LPS, Armijo, the DAO, and the MCSO under the EPPA, 42 U.S.C. § 1983, and New Mexico state law. The district court disposed of the majority of the claims prior to trial, dismissing some and granting summary judgment on others. The EPPA claims against the Co-op went to trial, and a jury found in favor of Fernandez and Abreu. Fernandez and Abreu now appeal the pre-trial disposition of their EPPA claims against LPS, and Abreu appeals the pre-trial disposition of his tort claims against the DAO and Armijo and his § 1983 conspiracy claim against Armijo and the Co-op.

## II.

### A.

First, both Fernandez and Abreu assert that LPS violated the EPPA. The district court granted summary judgment to LPS on the grounds that the EPPA only covers "employers" and that LPS was not an "employer" as defined by that statute. Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This court reviews "the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). "[W]e view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.*

The EPPA restricts the conduct of, and provides remedies against, an "employer" regarding the use of lie detector tests. *See* 29 U.S.C. §§ 2002, 2005. The statute defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee." *Id.* § 2001(2). Under the regulations, a polygraph examiner generally is not considered an "employer." *See* 29 C.F.R. § 801.2(c) ("A polygraph examiner either employed for or whose services are retained for the sole purpose of

-5-

administering polygraph tests ordinarily would not be deemed an employer with respect to the examinees."). "Ordinarily," of course, does not mean "never."

Other courts have adopted the "economic reality" test to determine whether a polygraph examiner is an "employer" for purposes of the EPPA. This test focuses on whether "as a matter of economic reality, that person or entity exerts some degree of control over the employer's compliance with EPPA." *Rubin v. Torneau, Inc.*, 797 F. Supp. 247, 253 (S.D.N.Y. 1992). It stems from cases interpreting the Fair Labor Standards Act, which defines "employer" the same way as the EPPA. *See id.* at 252 ("Just as the phrase 'acting directly or indirectly in the interest of an employer in relation to an employee' is applied to effect FLSA's purpose, so too, . . . must it be applied to effect EPPA's purpose—restricting the use of lie detectors in the work place."). Given Congress's use of the same language in defining the term "employer" in the two statutes, and because we agree with the reasoning of other courts that have adopted this test, we approve using the economic reality test in evaluating whether a polygraph examiner is an "employer" for purposes of EPPA.

The Fifth Circuit summarized four factors courts have considered in applying the economic reality test:

> [D]istrict courts have considered whether the examiner (1) decided that a polygraph examination should be administered; (2) decided which employee would be examined; (3) provided expertise or advice to the employer regarding compliance with EPPA's requirements, or the employer relied on the examiner to ensure compliance; or

(4) decided whether the examined employee would be subjected to disciplinary action, or merely reported the results of the polygraph examination to the employer.

*Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 727 (5th Cir. 2002). Like the Fifth Circuit, we "do not, and need not, further define the scope of the 'economic reality' test" to consider whether LPS qualifies as an employer. *Id.*

It is undisputed that LPS had no role in the decision to terminate Fernandez and Abreu's employment, so appellants' arguments focus on the other three factors. First, appellants argue that, by directing the Co-op how to get the tests taken, LPS decided that polygraphs should be taken. Appellants' suggestion is rather attenuated. The record shows that it was the Co-op, then Armijo, who contacted LPS about taking polygraphs. This indicates that it was the Co-op and/or Armijo who decided polygraphs should be taken. This factor does not support imposing liability on LPS.

Appellants also suggest that LPS advised the Co-op how employees should be selected for the polygraphs. Again, this inference is too attenuated to support liability. The record indicates that Lucero stated that he could not test Co-op employees as Leger originally requested, and that he would perform tests if requested by law enforcement and the individuals to be tested were identified by law enforcement. There is no suggestion that Lucero suggested or identified the specific employees to be tested, directly or indirectly. This situation is distinguishable from the examiner having a role in selecting the particular

employees to be tested. *Cf. Rubin*, 797 F. Supp. at 253 (noting that the examiner allegedly "represented it would inform [the employer] which employees could be examined lawfully"). Thus, this factor also does not support imposing liability on LPS.

Finally, appellants assert that Lucero advised the Co-op about compliance with the EPPA and the circumstances under which the Co-op employees should be polygraphed. In support, they primarily rely on Lucero's comments to Leger that the tests would have to be taken in conjunction with a law enforcement investigation and that the Co-op might be able to get the results of the tests from the DAO.

We have found only one case discussing the "advice" factor in any detail. In *Rubin v. Torneau, Inc.*, the examiner, who was also an investigator, was hired to investigate missing inventory. 797 F. Supp. at 248. He allegedly assured the employer he would identify which employees could lawfully be polygraphed and he would conduct the examinations in compliance with the EPPA. *Id.* at 248-49, 253. Construing the facts in the light most favorable to the appellants, the court determined the examiner might qualify as an employer and declined to dismiss the case.[1] *Id.* at 253.

---

[1]    Contrary to appellants' argument, *Rubin* involved a motion to dismiss for lack of subject matter jurisdiction, not summary judgment.

The only other case allowing a claim against a polygraph examiner to proceed because the examiner may have exercised "some degree of control over the employer's compliance with the EPPA" does not explain exactly what the examiner did. *James v. Professionals' Detective Agency, Inc.*, 876 F. Supp. 1013, 1016 (N.D. Ill. 1995). That case involved a motion to dismiss, and the complaint made the appropriate allegations of employer status. *Id.* The court suggested that, if the evidence did not show that the examiner did more than administer the tests, the examiner should file a motion for summary judgment. *Id.*

In contrast to the situation in *Rubin*, Lucero did not make any assurances to the Co-op about EPPA compliance, and LPS was not hired to ensure EPPA compliance. Notably, Lucero's contacts with the Co-op were through the Co-op's attorney, whose duty it was to advise the Co-op about its legal responsibilities. *See Calbillo*, 288 F.3d at 728 n.4 (stating that it was not reasonable to infer that the employer looked to the polygraph examiner for legal advice, when the employer had hired attorneys to advise it). Further, the statements were in the nature of gratuitous comments, not so much about EPPA compliance, as explanations why LPS would not assist the Co-op. In *Calbillo*, the Fifth Circuit declined to find employer status for an examiner, despite inferring from the record that the examiner "may have answered the attorneys' questions regarding the technical procedures involved in performing a polygraph examination and he

-9-

might have even discussed some of the general requirements under the EPPA and the Secretary's regulations." 288 F.3d at 728 n.4.

Appellants contend that Lucero should have known the arrangement was a sham to allow the Co-op to circumvent the EPPA, arguing "from the very beginning LPS knew that the Cooperative was the driving force behind the polygraphs. LPS then worked with the Cooperative to satisfy the employer's request for these polygraphs." Aplt. Br. at 17. So long as LPS did not involve itself sufficiently to be considered an "employer," however, whether it knew or should have known that the arrangement was a sham is not relevant to its liability under the EPPA. Simply put, if LPS is not an "employer," it is not subject to EPPA liability. An examiner is not necessarily liable merely because a particular examination violated the EPPA. *See Calbillo*, 288 F.3d at 728 (affirming summary judgment for examiner); *Fallin v. Mindis Metals, Inc.*, 865 F. Supp. 834, 840 (N.D. Ga. 1994) (granting summary judgment to examiner).

For these reasons, the district court did not err in granting summary judgment to LPS on appellants' EPPA claims.

**B.**

Abreu asserted a state-law tort claim that Armijo, the DAO, and the MCSO conspired to violate his constitutional rights. As relevant on appeal, the district court granted judgment on the pleadings to Armijo and the DAO, holding that the state had not waived its sovereign immunity against such claims. Specifically,

the court determined that the New Mexico Tort Claims Act's (NMTCA) waiver of sovereign immunity for the actions of a "law enforcement officer" did not apply to Armijo. This court reviews a defense motion for judgment on the pleadings de novo. *Soc'y of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1240-41 (10th Cir. 2005). "As with a ruling under Fed. R. Civ. P. 12(b)(6), we uphold a dismissal only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Id.* (quotation omitted).

The NMTCA preserves sovereign immunity against tort claims for state governmental entities and public employees acting in the scope of their duties, except as specifically waived. N.M. Stat. § 41-4-4(A). It waives sovereign immunity for tort claims involving the conduct of a "law enforcement officer." *Id.* § 41-4-12. The statute defines "law enforcement officer" as "a full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor." *Id.* § 41-4-3(D). Abreu's claim against the DAO must rest on its potential liability for Armijo's conduct, because an agency cannot be "a full-time salaried public employee" as required by the definition of "law enforcement officer." *See Dunn v. McFeeley*, 984 P.2d 760, 766 (N.M. Ct. App. 1999).

-11-

Abreu argues that the district court "merely applied a mechanical and stiff interpretation" of the NMTCA definition, and that "[s]uch an interpretation flies in the face of the functional approach adopted by the New Mexico courts." Aplt. Br. at 21. He contends Armijo and the DAO "performed routine, police-like functions in investigating the missing compressor." Aplt. Br. at 20.

The New Mexico approach pays more deference to the statutory definition than Abreu implies. The New Mexico courts take the definition as their starting point, examining whether the particular defendant's primary duties fit into any of the statutory criteria. In *Anchondo v. Corr. Dep't*, 666 P.2d 1255, 1257 (N.M. 1983), the New Mexico Supreme Court stated, "[i]n determining whether a person is involved in law enforcement work, this Court has adhered to the concept of traditional law enforcement activities," which it indicated "include preserving the public peace, preventing and quelling public disturbances, [and] enforcing state laws, including but not limited to the power to make arrests for violation of state laws." It is the employee's *primary duties* which are the crux of the inquiry. "The statutory requirement that the defendants be law enforcement officers does not focus on the defendants' specific acts at the time of their alleged negligence. Instead it simply requires that the defendants' principal duties, those duties to which they devote a majority of their time, be of a law enforcement nature." *Weinstein v. City of Santa Fe*, 916 P.2d 1313, 1317 (N.M. 1996).

Further, even if a public employee is authorized to exercise some of the traditional functions of law enforcement officers, he or she does not necessarily come under the waiver provision. In *Dunn v. New Mexico*, 859 P.2d 469, 472 (N.M. Ct. App. 1993), the court held the Director of the Motor Vehicle Division was not a law enforcement officer, even though he was statutorily invested with the power to act as a peace officer to enforce the Motor Vehicle Code, because his duties primarily involved administrative matters. In *Vigil v. Martinez*, 832 P.2d 405, 411-12 (N.M. Ct. App. 1992), the court held that probation and parole officers were not "law enforcement officers"; although they occasionally held persons in custody and had some powers of arrest, neither was a principal duty.

The New Mexico appellate court has held, in other circumstances, that non-attorney employees of the DAO were not "law enforcement officers." *See Abalos v. Bernalillo County Dist. Att'y's Office*, 734 P.2d 794, 801 (N.M. Ct. App. 1987) (holding that employees who processed paperwork to notify detention center of indictment and warrant were not involved in holding accused persons in custody so as to be considered "law enforcement officers"); *see also Coyazo v. New Mexico*, 897 P.2d 234, 236 (N.M. Ct. App. 1995) (holding that "law enforcement officer" does not include "district attorneys in their prosecutorial role" because they do not engage in traditional law enforcement activities).

Looking solely at the pleadings, judgment for appellees was warranted, as Abreu's complaint merely states that Armijo is the "chief investigator" for the DAO. Aplt. App. at 71. It does not allege that Armijo is a "law enforcement officer" or describe his duties to show that he fits within § 41-4-12's waiver. *Cf. Dunn v. McFeeley*, 984 P.2d at 767 ("[O]ur appellate courts have repeatedly found that a connection to law enforcement activity, even being a member of the law-enforcement team, is insufficient by itself to make one a law enforcement officer; the person's duties must directly impact public order.").

Even if we were to look beyond the pleadings, the record does not indicate that Armijo is a "law enforcement officer" for purposes of the NMTCA. Armijo testified that his "main job is to assist the attorneys in preparation for preliminary hearings, grand juries, trial, assist different agencies with their investigations, help on search warrants." Aplt. App. at 448. He supervises the assignments of a deputy and two investigators. *Id.* at 449. He also accepts assignments from district attorneys, the DAO office manager, the director of the pre-prosecution diversion program, and DAO finance people. *Id.* These facts do not support an inference that Armijo's primary duties are holding persons in custody, maintaining public order (except in the sense of putting criminals behind bars that *Coyazo* rejected, 897 P.2d at 236), or making arrests for crimes.

Armijo's investigatory duties appear closest to a traditional law enforcement activity. Looking at the pleadings, such duties arguably were

invoked by the complaint's description of Armijo's position as "chief investigator." We decline to hold, however, that investigations alone are sufficient to make an employee a "law enforcement officer" for NMTCA purposes. The statute does not mention a primary duty of investigating crimes, instead focusing on other duties. Moreover, while criminal investigations are *a* duty of police officers, *see* N.M. Stat. § 29-1-1, they can also be undertaken by private investigators and other private parties. Thus, investigations qualitatively differ from the duties described in the statutory definition and the law-enforcement functions identified by the New Mexico courts (i.e., making arrests, custody of pre-trial detainees), which are generally reserved to police officers.

Because New Mexico has not waived its sovereign immunity, the district court did not err in granting judgment on the pleadings to Armijo and the DAO on Abreu's state-law tort claim.

## C.

Finally, Abreu asserted that the Co-op and Armijo conspired to take the polygraphs and thereby violated his constitutional and statutory rights. The district court granted summary judgment to appellees on this claim. As stated, we review a grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. *Simms*, 165 F.3d at 1326.

Abreu argues that the district court erred in stating he had presented insufficient evidence to create a genuine issue of material fact. Our review indicates, however, that there was no error in the district court's evaluation. Abreu seems to be advocating a "joint action" theory of § 1983 liability. *See Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000) (construing conspiracy argument as assertion of a "joint action" theory). "When a plaintiff seeks to prove state action based on a conspiracy theory, a requirement of the joint action charge . . . is that both public and private actors share a common, unconstitutional goal." *Id.* at 1126 (quotation omitted; ellipsis in original). Abreu must demonstrate "a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences." *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990) (quotation and alteration omitted).

On appeal, Abreu provides no record cites for the evidence that he claims creates a genuine issue of material fact. In addition, he largely relies on a general statement, saying, "[n]either time nor space allow for a complete rendition of the facts Abreu genuinely disputed and upon which the district court inappropriately interpreted in granting Armijo summary judgment on the § 1983 conspiracy claim." Aplt. Br. at 25. These types of unsupported argument do not justify reversal. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) ("Without a specific reference, we will not search the record in an effort to

determine whether there exists dormant evidence which might require submission of the case to a jury." (quotation omitted)).

Even if Abreu had properly supported his argument, the facts do not appear sufficient for a jury to find a single, unlawful plan. The evidence might establish a common goal of taking polygraphs, but not necessarily of taking polygraphs *for the Co-op in violation of the EPPA*.

**III.**

The judgment of the district court is AFFIRMED.